**FLEMING, Administrator, Office of Temporary Controls, v. ALFSON et al.**

**Civ. A. No. 949.**

United States District Court
D. Montana. Great Falls Division.

Sept. 16, 1949.

John B. Tansil, United States District Attorney, Franklin A. Lamb, Assistant United States District Attorney, Billings, Mont., for plaintiff.

H. B. Hoffman, Orin R. Cure, Great Falls, Mont., for defendants.

PRAY, Chief Judge.

The above named Administrator as plaintiff, commenced this action against the defendants, in behalf of the United States, to recover treble damages for overcharges and other relief under authority of Sections 205(e) and 205(a) of the Emergency Price Control Act of 1942, as amended and extended, 50 U.S.C.A.Appendix, § 925. Jurisdiction is conferred on this court by Section 205(c) of said Act.

It appears from the complaint that the defendants were engaged in the business of making mill sales of lumber at Fairfield, Montana, and that such sales were subject to price control under the Emergency Price Control Act, and particularly Maximum Price Regulation 94; that from May 4, 1946, and thereafter, the defendants made sales of lumber at prices which in all

amounted to the sum of $616.87 in excess of the maximum prices permitted under Maximum Price Regulation 94, as shown in Exhibit A attached to the complaint. Plaintiff seeks a judgment for three times the amount of the overcharge.

Defendants answered denying they had any knowledge or information sufficient to form a belief as to any of the paragraphs of the complaint, except they admitted that they did engage in the business of making mill sales of lumber in the State of Montana, but had no knowledge or information as to whether they were subject to price control or the Maximum Price Regulation 94; alleged that they inquired as to laws, rules and regulations at the office of Price Administration for the Montana District in Helena; that it was their intention to comply with all such rules and regulations, if any were applicable to defendants' business; that said office on June 14, 1946, replied that they did not have a copy of the lumber regulations available, but would mail a copy within the next few days, and also would attempt to discuss the matter personally within ten days thereafter. That the said office "utterly failed and neglected either to advise the defendants as to their obligations or to send a copy of the regulations applicable, by virtue whereof the defendants have been and now are unadvised and were unable duly to obtain information as to what their obligations, if any, in the premises were." Defendants claim in their answer that they have been ready and willing to perform their obligations, and offer to do so, and have never had any intention to "evade or circumvent" their obligations.

The case came on for trial, the defendants had been duly notified and failed to appear; their attorney appeared, and said he had received a letter from defendants in response to notice of trial in which it appeared that defendants claimed they had no money to fight the case, or the Government, or pay a lawyer, and further "If the Government says we owe them that much I guess we do, which I hope will not be taken as liability in the case." From the foregoing it would appear that the defendants were convinced that the facts were as alleged in statements rendered them before beginning suit. The only question now seems to be whether the overcharges should be trebled, and whether the defendants failed in seasonably taking practicable precautions to avoid a violation of the regulation aforesaid.

The defendants failed to cooperate with their attorney, Mr. Hoffman, who appeared willing and anxious to be of assistance to them whether he was ever paid for his services, and tried to impress upon defendants the necessity of their coming to his office to discuss the case and the correspondence in progress between him and Mr. Angland, Government counsel in charge of the case, but defendants never did respond, and it would seem that they had deliberately closed the door to any negotiations for a compromise. It is unfortunate that defendants have taken such a peculiar attitude towards the case, and especially towards those who stood ready and willing to afford assistance. But after all there seems to be a ray of light discernible notwithstanding defendants' later apparent disregard of their own interests, which may afford a solution of this peculiar problem, which seems to present an odd contrariety in human nature. Has there been any showing of good faith, such as might be available as a defense in this case on the issue of treble damages? Was the overcharge the result of the defendants' wilful act or failure to take practicable precautions to prevent a violation of the regulation?

It appears from Mr. Hoffman's statement that after the defendants were served with papers in the action they both called at his office and retained him to defend the case; that they had called at the Office of Price Controls in Helena before they commenced operations and were unable to learn there whether there were any regulations that applied to them; that such regulations could not be found in the Office of Price Controls; what they told their attorney they did in making inquiry at the Office of Price Controls is purely hearsay, but it passed into the record without objection from the other side; however, it has been established that they wrote the above of-

fice on June 4, 1946, about regulations, if any there were, which letter the Government was unable to produce, but the reply by the Office of Price Controls is in evidence, and shows that defendants' inquiry by letter of June 4, 1946, was about lumber regulations and the office had none available for mailing, but would put the writer, Norman Alfson, defendant, on the mailing list, and would attempt to discuss the matter with him personally within the next ten days. It does not appear that the assurances given in this communication were fulfilled.

Here is presented what appears to be a bona fide attempt on the part of defendants to find out what lumber regulations were in existence before they commenced or continued their business operations. Excluding the hearsay evidence in regard to their personal call at the office in Helena, still this letter would indicate that defendants at the beginning were endeavoring to find out what, if any regulations were applicable to their lumber operations in order to avoid a conflict with the law. The court is inclined to the view that the defendants at this stage were showing good faith and taking practicable precautions to avoid a violation of law; but their subsequent conduct is almost beyond explanation, except for the excuse of their financial distress which may have been a controlling reason for their failure thereafter to take even the slightest interest in their most vital affairs. Their subsequent actions indicated such stupidity on their part that the court hesitates to hold them wholly responsible. Counsel for the defendants and the District Attorney had been corresponding with a view to a compromise, and it does not seem improbable that one might have been made, and the attitude of the latter during the trial would indicate that he was favorable to any reasonable proposal in that regard. Taking all the circumstances into consideration it is plainly evident to the court that there was an effort made by the defendants to avoid any violation of the regulation in question at the beginning of their business operations, and, furthermore, that some blame should be attributed to the representatives of Price Controls in their initial contact with the defendants.

Pursuant to the foregoing views the court has decided to hold that recovery herein shall be limited to the overcharge of $616.87, which has been definitely established, and that judgment should be entered therefor, and for costs of this action, in favor of plaintiff, and such is the decision of the court herein. Findings and conclusions may be submitted accordingly under the rule.